VÍCTOR MANUEL SOSA Y MILIÁN ET AL., Plaintiffs and Appellants, *v.* JUAN ISIDRO SOSA ESCOBAR ET AL., Defendants and Appellees.

No. 8973. Argued November 9, 1944.—Decided April 10, 1945.

*Ricardo H. Blondet* for appellants. *Heriberto Torres Solá* for appellee Celestina Sosa Vizcarrondo. *Heriberto Torres Solá* and *Gabriel de la Haba* for appellee Antonio R. Matos.

*Frank Martínez, M. A. García del Rosario,* and *Sebastián García Díaz,* for appellees Federal Land Bank of Baltimore and The Land Bank Commissioner; *Sifre, Franceschi & Sifre* for appellee Loíza Sugar Company; *C. Coll y Cuchí* for appellee Marcial Suárez.

OPINION OF MR. JUSTICE TODD, JR., in which MR. CHIEF JUSTICE TRAVIESO concurs.

Since I am in disagreement with the rule laid down in *Ex parte Ortiz,* 42 P.R.R. 339, to the effect that adopted

children are forced heirs, which rule was reaffirmed in *Bardeguez v. Bardeguez*, 48 P.R.R. 692, I am of the opinion that the lower court did not err in dismissing the complaint in this case. The facts involved herein have been set forth fully in the opinion of Mr. Justice Snyder. As the division of opinion which exists in this court on this matter of importance leaves in effect the rule established in the aforesaid cases until a majority of the court reaffirms or reverses the same, I feel impelled to set forth, in a general way, my views on this matter.

An heir has the status of a forced heir not only because § 736 of the Civil Code specifically enumerates those in that category, but because § 735 has previously defined the meaning of legal portion (*legítima*) to the effect that "it is that part of the property which the testator cannot dispose of because the law has reserved it for specified heirs, *called on that account heirs by force of law*," and also because §§ 737 and 738 clearly determine what constitutes the legal portion of children, legitimate descendants, and the parents or ascendants, respectively, and §§ 761 to 764 and §§ 767 to 772 likewise determine the share corresponding to a widower and acknowledged natural children, respectively. "All heirs who are not forced heirs are *voluntary* heirs: the testator chooses them as he pleases." 6 Manresa, Civil Code, 630.

But in the case at bar we are met with the insurmountable obstacle that no matter how extensive our search, we cannot find anywhere in our Code a legal portion allotted to adopted children in order that they may be considered forced heirs.

The fact seems to have been overlooked that if an heir has the status of forced heir, it is precisely because in a testate succession he may claim his legal portion if it has been in any way injured in the will. If one establishes and accepts the premise that our Civil Code does not allow

adopted children any share in the inheritance as their legal portion and that it does not include them among those who under § 736 are forced heirs, where is the basis for saying and holding that in spite of all this, they are forced heirs? It is stated that this is the meaning and scope which should be given to §§ 132 and 133 of the Civil Code and the intention of the Legislature in adopting them from § 214 of the Civil Code of Louisiana. We do not agree with this view for various reasons.

In the first place, §§ 132 and 133 are not an exact copy of § 214 of Louisiana, inasmuch as the Legislature changed substantially its meaning and added complete phrases which do not appear in the Code of Louisiana. Thus we see that while § 214 only provides, in its pertinent part:

"Any person may adopt another as his child, except those illegitimate children whom the law prohibits him from acknowledging; but such adoption shall not interfere with the rights of forced heirs.

"* * * * * * *

"The person adopted shall have all the rights of a legitimate child in the estate of the person adopting him except as above stated.";

§ 132, by way of explaining more clearly the intention of the Legislature, states: "Adoption shall *in no case* injure the rights belonging to forced heirs, *which shall remain as though the adoption had not taken place.*" Likewise while said § 214 uses the term *estate* (*"herencia"*) our § 133 provides that: "The person adopted shall enjoy in the *family* of the adopter the rights and duties and consideration of a legitimate child, with the exception noted in the preceding section." (Italics ours.)

I do not agree with the argument that the word "family" is exactly the same as "estate" or, as was stated in *Ex parte Ortiz, supra,* that: "In any idea of universal succession, the word 'family' *might mean almost anything. It probably embodies the idea of such universal succession.*" (Italics ours.)

When dealing with a matter of such great importance as the determination of rights of succession, we should not decide a case on the ground that the said word may mean "almost anything" or leave it in the undetermined or uncertain field of "probabilities."

In the same case of *Ex parte Ortiz, supra,* it is stated that it is significant that our Legislature left out of our Civil Code § 177 of the Spanish Civil Code.[1] But what is really significant is that said Section was not entirely omitted, since the last sentence thereof, providing that "The person adopted retains all the rights belonging to him in his natural family with the exception of those relating to *patria potestas,*" was expressly included in § 137 of our Code. What meaning should we attach to this action of the Legislature? According to *Ex parte Ortiz,* supra, we have the extraordinary situation that the adopted child has the status of a forced heir in his natural family (as he really has) and in addition he is a forced heir in the family of his adopter. He is indeed, under this view, a most privileged forced heir.

In my opinion, § 137 is of the utmost importance in seeking to determine the Legislature's intention when it enacted § 133. Commenting on the final provision of § 177 of the Spanish Civil Code, equivalent to our § 137, Scaevola states: "And what shall these rights be? (1) To receive support if the adopter can not furnish it. We have already said that the right of support does not cease when the *patria potestas* is terminated; this is based on necessity and on blood relationship. (2) To use the surname of the natural family. (3) To receive gifts by acts *inter vivos* which shall

---

[1] "Section 177. The adopting parent acquires no right to inherit from the person adopted. Nor does the latter acquire any right to inherit from the former otherwise than by will, unless the adopting parent shall have agreed in the deed of adoption to constitute the person adopted as his heir. This obligation shall cease if the person adopted dies before the adopting parent. The person adopted retains all the rights belonging to him in his natural family, with the exception of those relating to *patria potestas.*"

be charged to the legal portion. (4) *To succeed by will.* (5) *To receive betterments.* (6) *To succeed intestate.* (7) *To claim the completion of his legitime if the testator left him less than the portion which necessarily belonged to him.* (8) To have the property of the deceased spouse reserved should the survivor marry a second time. (9) To increase the portion of the heir in the cases provided by the Code. (10) To receive inheritance by benefit of inventory or by the right to choose. (11) To exercise tutorship in cases where he is appointed by law, and to form part of the council with respect to the relatives of his natural family." (Italics ours.) 3 Scaevola, Civil Code (3d ed), 449.

More concisely, but to the same effect, in his *Estudios de Derecho Civil* (2d ed.), vol. 5, p. 1106, Sánchez Román states: "The person adopted retains all the rights belonging to him in his natural family; such as, support when the adopter is unable to furnish it, the use of the family's surname *as well as all the succession rights* in their different phases and in general, all those allowed by the Civil Code attributable to the status of a member of the family except those relating to the *patria potestas,* while the adopter exercises the same." (Italics ours.)

We therefore see that the adopted child, pursuant to § 137, retains all his rights in the natural family. Nevertheless, § 133 provides that the adopted child shall have in the family of the adopter "all the rights and duties and consideration of a legitimate child" and it is contended that this is sufficient to hold that among these rights are those of a forced heir in the testate succession of the adopter, because in accordance with § 118, the legitimate child has a right to the legitimate inheritance and consequently the adopted child is also entitled to a "legitime" in the estate of the adopter. I do not accept this conclusion for the reasons which I have set forth as to the failure of our Code to fix a legal portion for the adopted child and also because of its failure to in-

clude him among the forced heirs specified in the code and in addition because, although § 136 provides that the adopter and the adoptee owe each other support, it limits said right by adding "This obligation shall be understood as in no wise injuring the prior right of legitimate children, of illegitimate children and of the ascendants of the adopter to be supported by him."

If § 132 provides that adoption shall in no case injure the rights belonging to forced heirs, which shall remain as though the adoption had not taken place, and under § 136 the right to support of the adopted child is subordinated to the preferential rights not only of the legitimate children and ascendants of the adopter but also of his *illegitimate* children in general,[2] how can it be maintained that it was the intention of the Legislature, despite the fact that it used the words "legitimate child" in § 133, to make the adopted child a forced heir in the testate succession?

It may be said, and rightly so, that the Legislature had some purpose in using the special language of § 133 (very different from that used in § 214 of Louisiana) and related to § 132 (more specific than § 214 of Louisiana). In my opinion, the only logical interpretation is that the rights of the adopted child must be placed in the intestate succession and even there in the place corresponding to him, that is, after those who in the intestate succession are called preferential (who in the testate succession are called forced heirs), or, after the legitimate descendants, ascendants, acknowledged natural children, and without prejudice to the usufructuary share of the widower. A similar conclusion is reached by Sánchez Román in facing the problem presented by the failure of § 177 of the Spanish Civil Code to fix a place for the adopted child in order to make effective his right of succession when the adopting parent agrees in the deed of adop-

---

[2] It should be noted that § 176 of the Spanish Civil Code limits this preferential right of support to acknowledged natural children and to the ascendants of the adopting parents.

tion to constitute him as an heir. The rights of the forced heirs in the testate succession, the preferential rights in the intestate succession, and the very explicit preference which by reason of the obligation to support is established by § 176 (§ 136 of our Code) make him conclude that: "it is imposible to assume, in good legal logic, that the adopted children, in the only case where pursuant to Section 177, now under discussion, acquire the right by exception to inherit *without a will* from the adopter, may and should be *preferred* to none of those persons, nor to *take together* with them in the intestate succession of the adopting parent, since there is no portion or determined quota to that effect, and the former should have the preferential rights to succeed in *all* the inheritance; the hypothesis of legitimate or legitimated descendants not being impossible, notwithstanding the prohibition contained in subdivision 2 of Section 174 that those who have issue of this kind should not adopt, since such issue may be born after the adoption, inasmuch as the act of adoption is not an impediment to a subsequent marriage. On the other hand, it seems that in order that this conditional and hypothetical right should be effective, which right is acquired under Section 177 by exception by the adopted child to inherit without a will from the adopting parent who agreed in the deed of adoption to constitute him as an heir, the most reasonable thing would be to place his right of succession before the collaterals of all degrees (Sections 946 to 955) without prejudice to the rights of the widower (Section 834 and the related sections), inasmuch as the collaterals do not have the status of forced heirs nor the right of support, which only exists by exception among brothers. (Last paragraph of Section 143)"[3]

---

[3] Sánchez Román, *op. cit.*, pp. 1104, 5, note (3).

To the same effect, Scaevola states:

"The silence of the Civil Code leads us likewise to uphold the preferential rights of the ascendants and of the acknowledged natural children in the intestate succession, notwithstanding the promise made to the adopted child to constitute him as an heir. But there is also a Section, already discussed which

In the former legislation the Spanish Civil Code also did not recognize an adopted child as a forced heir in the testate succession. The *Leyes de Partida* and the *Fuero Real* acknowledged in his favor the whole or part of the inheritance in the intestate succession.[4]

The conclusion I have reached is in accordance with that

---

it might be said, gives the key to the intention of the lawmaker, which intention we attempt to determine in order to fill the gap due to his oversight. That Section is Section 176. It provides, as we have seen, for the reciprocal obligation of support between the person adopted and the adopted parent, which is the fundamental and principal object of adoption. Nevertheless, the adopted child is subject to the preferential rights of the descendants and acknowledged natural children. This is not a question of a right which springs from the voluntary act of the adopter, such as the right which flows from the promise to constitute him an heir, but of the duty which is the soul of the adoption. And if in regard to support, the ascendant and the natural child of the adopter have a preferential right, why should they not have such right in the intestate succession?

"Having broken in the latter the chain of the forced succession, if the promise is made, it clearly appears that the will of the adopter is that his adopted child should be preferred to the collaterals and even to the surviving spouse, who nevertheless shall preserve, in our judgment, the right to the usufruct of his legal portion fixed by section 7, chapter II, tit. III, book three. The distance between the collaterals, the nonexistence of reciprocal duties—even between legitimate brothers there exists the duty of support in case of extreme necessity—the failure to be declared forced heir, everything coincides to prefer the adopted child, reserving for him this intermediate place in the intestate succession, more so when the will of the adopter was shown in the deed of adoption by virtue of his solemn promise made to the adopted child to constitute him as an heir.

"So that in the hypothesis which we have presented and which has been the object of this analysis, that is, that in the case where with the adopted child there concur descendants born after the adoption, ascendants, legitimated children by royal concession and acknowledged natural children, the adopted child, notwithstanding the promise made to him in the deed of adoption to constitute him as heir, *shall acquire nothing.*" Scaevola, *op. cit.*, 3d ed., vol. III, pp. 445, 446.

[4] Commenting on this legislation, Manresa states:

". . . It was an accepted doctrine, founded on *Leyes* V, tit. 6, book 3, and 1st, tit. 22, book 4, of the *Fuero Real*; 8th and 9th, tit. 16, of *Partida* 4, and 1st and 7th, tit. 20, book 10 of the *Novísima Recopilación*, that the adopted child was an intestate heir of the adopter who had no legitimate or natural descendants or ascendants; but to whom no legal portion was allotted and he could be omitted in the will. . . ." Manresa, *Comentarios al Código Civil Español*, 2d ed., vol. II, p. 71.

of Mr. Muñoz Morales, which he set forth in his Annotations to the Civil Code of Puerto Rico, volume X, *Revista Jurídica de la Universidad de Puerto Rico*, p. 433, where he says: "Now that our Legislature has chosen to re-establish the old doctrine, we are inclined to side with the declaration of the right as was unconditionally recognized by the *Leyes de Partida* . . ." for those rights referred exclusively to the intestate succession. In commenting on the cases of *Ex parte Ortiz* and *Bardeguez* v. *Bardeguez, supra,* the said author expressly states that "some uncertainty is apparent in both decisions as to the absolute hereditary right of adopted children and we do not know what would be the judgment of the Court in case of ascendants or of children born after adoption," and that "It would be advisable therefore that certain amendments be made in our Code in order to dissipate these doubts and that adopted children be expressly included as forced heirs, assimilating them to the status of legitimate and legitimated children or acknowledged natural children." Moreover, he maintains that, according to *Ex parte Ortiz,* "When the adopting parent leaves descendants and ascendants, the adopted child is not entitled to inherit from him," and that "When the adopter dies intestate, being survived by an ascendant (mother, father, grandfather, etc.) the latter excludes the adopted child from the inheritance." *Op. cit.,* p. 437.

For these reasons, I am unable to agree with the conclusion that, in enacting §§ 132 and 133 of the Civil Code in 1902, it was the intention of the Legislature to recognize adopted children as forced heirs. It is possible that such was its intention. But, by leaving in force, among others, §§ 136 and 137, by not alloting a legal portion to them, and by failing to include them among the forced heirs enumerated in § 736, despite the fact that it expressly amended this last Section in 1905, that is, three years after it enacted §§ 132 and 133, the Legislature failed to carry out this

intention. I admit that the Louisiana cases, by interpretation, recognize in the adopted children certain hereditary rights in the intestate succession of the adopter. I do not believe we are bound to follow these cases when the language of §§ 132 and 133 of our Code is different from that of § 214 of the Louisiana Code, and when, pursuant to our Code, the adopted child preserves the rights belonging to him in his natural family, a situation which does not exist in Louisiana.

A patent example of the contradiction which might be involved in deciding the case at bar is the fact that, according to the opinion of Mr. Justice Snyder, even though he maintains, pursuant to the ruling of *Bardeguez* v. *Bardeguez, supra,* that because an adopted child is not a descendant in direct line, he is not a legitimate descendant and therefore § 767 of the Civil Code should not be applied, immediately thereafter he states that § 737, which is precisely the one which fixes the legal portion of the children and legitimate descendants, is the one applicable, and that by applying the latter Section in connection with § 769, the intention of the Legislature is fulfilled. This reasoning has the effect of legislating judicially by fixing a legal portion for the adopted child equivalent to that of the legitimate child. Nevertheless, when a case arises where a legitimate child exists together with an adopted child then another different and arbitrary legal portion would have to be judicially fixed.

In our desire to ascertain the intention of the Legislature, we are confronted with the difficulty that when injecting §§ 132 and 133 into our Civil Code, by bringing them from § 214 of the Louisiana Code, the result in our Code was "an *incongruent mixture* of two opposing tendencies" because "they were not harmonized with the others (Sections) introduced from the Spanish Civil Code." [5]

---

[5] Muñoz Morales, *op. cit.,* p. 436.

742

In brief, I believe that the recognition of an adopted child as a forced heir should be made expressly by our Legislature, if it so desires, and not by means of sporadic judicial legislation every time a different situation presents itself in which an adopted child exists together with one or more of the forced heirs expressly specified in our Code.

I am in agreement with that part of the opinion of Mr. Justice Snyder which declares the co-defendants specified therein third persons.

The judgment should be affirmed.

OPINION OF MR. JUSTICE SNYDER in which MR. JUSTICE DE JESÚS concurs.

In 1921 Manuel Sosa Oliva died single, leaving no ascendants. He was survived (a) by Víctor Manuel Sosa and Manuel Isidro Sosa, his adopted children and plaintiffs-appellants herein; and (b) by Juan Isidro Sosa Escobar and Celestina Sosa Vizcarrondo, who are his acknowledged natural children and are among the defendants-appellees herein.

Manuel Sosa executed an open will a month before his death. In it he designated Juan I. Sosa Escobar as the executor and his two acknowledged natural children as his sole and universal heirs, in the remainder of his estate, after all the other provisions of the will had been carried out. The will also included:

(1) A legacy to Carmen Escobar, the mother of his two acknowledged natural children, consisting of one-third of a large rural property known as "Josefina", and also one-third of the rest of his property of whatever kind; the said legacy to be effective during her life and at her death to go to Víctor Manuel Sosa, Manuel Isidro Sosa, Carmen María Sosa Millán, and Francisca Sosa Millán.

(2) A legacy of $10,000 each to Víctor Manuel Sosa, Manuel Isidro Sosa, Carmen María Sosa Millán, and Francisca Sosa Millán. The will provided for payment of the interest on these legacies to the legatees while they were minors, but that Juan I. Sosa Escobar and Carmen Escobar were to be "administrators" of these legacies.[1]

(3) Other legacies ranging from $1,000 to $5,000 each to María Sosa, Josefa Sosa, Cristóbal Antonio Fernández Sosa, and Manuel Fernández Sosa, all of whom are therefore defendants-appellees herein.

On November 5, 1921, Juan I. Sosa Escobar, the executor, and Celestina Sosa Vizcarrondo—the two acknowledged natural children of the testator—and their mother—Carmen Escobar, who, as we have seen, was a legatee in a substantial amount—executed a partition deed of the estate. This partition deed listed the real and personal property of the estate as valued at $171,893.06, with debts totalling $24,565.68. After providing for payment of the debts and legacies by Juan I. Sosa as executor, the estate was divided among the said three individuals by the deed in a manner not neces-

---

[1] See *Sosa* v. *Sosa*, 58 P.R.R. 474, 476, for a verbatim transcript of the terms of this particular legacy.

sary to detail here. It is enough to say that, for reasons to be noted, the plaintiffs-appellants attack the partition deed as void, and therefore join the three persons who executed it as defendants herein.

As to other defendants, some have been joined in this suit because debts were paid to them, or credits were collected from them, by the executor;[2] Antonio R. Matos, The Federal Land Bank of Baltimore, and the Land Bank Commissioner are joined as defendants because, through a series of transactions, they became owners or mortgagees of real property originally divided in the partition deed. Loíza Sugar Co. is joined as a defendant not only because it is alleged it improperly received payment of a mortgage loan from the executor, but also because the estate itself included a number of shares of stock in that corporation, which the plaintiffs assert were improperly distributed by means of the partition deed.

The remaining defendants—María Sosa, Josefa Sosa, Cristóbal Fernández Sosa, Antonio Fernández Sosa, Manuel Fernández Sosa, Carmen María Sosa, and Francisca Sosa—are joined as legatees allegedly paid in excess, in view of the alleged right of the plaintiffs-appellants to certain forced portions.

The fifth amended complaint was filed herein in 1942 by Víctor Manuel Sosa Millán and Manuel Isidro Sosa Millán, who were legally adopted in 1919 and 1920, respectively, by the testator. It prays that the institution of heirs in the will be declared null because of the omission therefrom of the plaintiffs, adopted children of the testator; that pay-

---

[2] A debt of the estate consisted of a loan, secured by a mortgage for $12,833.27, to the Loíza Sugar Co., which is therefore a defendant herein. Two credits of the estate, collection of which by the executor were provided for in the partition deed, were loans secured by mortgages of $8,000 and $1,000 to Marcial Suárez and Ceferino Osorio, respectively, who were therefore made defendants herein on the theory that the said payments were improperly made. We do not set forth the facts as to these matters in more detail for reasons hereafter noted.

ments by certain defendants to the executor as above indicated be declared void, and that they be ordered to make new payments; that the Loíza Sugar Co. be ordered to transfer the shares of stock distributed under the partition deed to the *Sucesión* of Manuel Sosa Oliva; that the mortgages presently on the real property belonging to the testator at his death be cancelled; that the legacies in the will be declared null because excessive; and that the partition of the estate be declared null and void.

After a trial on the merits, the district court entered judgment for the defendants. The case is here on appeal from that judgment.

I

We are met at the threshold of the case with the problem as to whether Víctor Manuel Sosa and Manuel I. Sosa, plaintiffs-appellants, adopted children of the testator, have any inheritance rights at all as forced heirs in view of the fact that the testator was survived by his two acknowledged natural children. The district court held that the mere existence of other forced heirs contemplated by § 736[3] of the Civil Code prevents the adopted children from taking anything whatsoever as forced heirs. The lower court reaches this conclusion by relying on *Ex parte Ortiz*, 42 P. R.R. 339. But neither the holding nor the language of that case has the scope attributed to it by the district court. Indeed, in holding in the *Ortiz* case that, despite the existence of a widower—who, under § 736 of our Civil Code, is a forced heir—the adopted children were the sole and universal heirs of the decedent, without prejudice to the usufructuary portion belonging to the widower, this court specifically held in the *Ortiz* case that the presence of other forced heirs did not oust adopted children from their status as such; we held

---

[3] That Section, as will hereinafter be noted in detail, lists natural acknowledged children as forced heirs.

only that in determining the rights of adopted children as such forced heirs, the rights of forced heirs specifically set up as such in § 736 should not be prejudiced.

This court has so interpreted the *Ortiz* case in *Bardeguez* v. *Bardeguez*, 48 P.R.R. 692. In that case we said at pp. 696-7: "The opinion rendered by this court in *Ex parte Ortiz*, 42 P.R.R. 339, 344, recognizes the right of adopted children to take as forced heirs. . . . This court in its opinion reviewed the statutory provisions in force in Puerto Rico with respect to adoption, and reached the conclusion that an adopted child is in the same position as a legitimate child of the adopting parent, and must be considered as a forced heir subject to the limitations imposed by law."

And the only limitation imposed by law, so far as inheritance is concerned, is found in § 132 of the Civil Code that "Adoption shall in no case injure the rights belonging to forced heirs, which shall remain as though the adoption had not taken place." On the other hand, § 133 gives an adopted child the rights and duties of a legitimate child, which under § 118 include the right to the legitimate inheritance (*la herencia legítima*).

The position of an adopted child as an heir is not new, either in the Spanish law or in European Codes. He was so recognized in the Roman law and, following the Roman tradition, in the Spanish law. *Ley 9, título 16, Partida 4* provided that an adopted child shall inherit all the estate of the one who adopted him if he dies without a will and without other children; and that if he died with children, the adopted child took an equal share with the rest. Later, *Ley V, título XXII, libro 4* of the *Fuero Real* limited the inheritance right of the adopted child to one-fourth of the estate in case of intestate succession. The *Leyes de Toro* and the *Novísima Recopilación* did not vary this. It was § 177 of the Spanish Civil Code which broke with this tradi-

[4] Luis Muñoz Morales, *Anotaciones al Código Civil de Puerto Rico, Revista Jurídica de la Universidad de Puerto Rico*, vol. X, No. 4, p. 411, at p. 427.

tion.[4] Section 177 provided that the adopting parent did not acquire any right to inherit from the adopted child, and that the adopted child did not inherit from the adopting parent, if left out of the latter's will, unless the adopting parent, in the adoption deed, committed himself to designation of the adopted child as his heir. Sánchez Román, in his Commentaries on the Civil Code, vol. 5, p. 1104, criticizes this provision of the Spanish Code, not only because it is out of harmony with other provisions of the Code, but also because it makes succession the subject of private contract—"a pact for future succession"—to which the adopter and the adoptee, as well as others required to consent to the adoption or to approve the same, must agree. Mucius Scaevola, in his Commentaries on the Civil Code, vol. 3, p. 434, likewise criticizes § 177 of the Spanish Civil Code. Scaevola attributes the curtailment of the rights of adopted children in Spain to the sparing use made in Spain of that institution. Yet, as he points out, no one is compelled to adopt a child; the consequences that flow therefrom arise out of an act voluntary in nature. And, as he also points out, the fact that the adopted child may have rights of inheritance in the estate of the adopter is what really makes it a beneficial institution. Indeed, it may be added in this connection that, without forced heirship, adoption amounts to little more than a limited period of apprenticeship or tutorship.

It is therefore highly significant that § 177 of the Spanish Code has no counterpart in our Civil Code and that §§ 132 and 133 of our Code have been interjected into the Code we originally borrowed from Spain. These two Sections were taken by our Legislature from § 214 of the Louisiana Code, the only difference being that our Code uses the word "family" where Lousiana uses "estate". We find no significance in that difference, at least for the purposes of this case. *Ex parte Ortiz, supra.* The important thing here is that § 133 clearly gives an adopted child "the rights and

duties and consideration of a legitimate child," which under § 118 include the right to the legitimate inheritance. To hold otherwise would be to conclude that our Legislature had a meaningless gesture in enacting § 133. Finally, the result we have reached is the interpretation accorded § 214 of the Louisiana Code by the courts of that State. *Alexander* v. *Gray,* 181 So. 639 (La., 1938).[5]

---

[5] In that case the court uses the following language (p. 643):

" . . . If it be true, as contended by exceptor, that an adopted heir may only participate as such in the succession of the adoptant. in the absence of forced heirs, then the amendment of 1867 is meaningless and was an idle gesture of the Legislature. The adoption itself would be wholly without legal effect as such, save possibly to create an apprenticeship relation. . . . Adoption, from its earliest history, was intended to, and in fact does, 'confer some substantial right' upon the person, the object of it. Article 214 of the Code does no violence to this age old principle, but adds to its force in declaring that the one adopted 'shall have all the rights of a legitimate child in the estate of the [deceased]', etc., 'except as above stated'. If the adopted child may not at all share in the state of the adopter where forced heirs exist, then this clause, supposed to guarantee a right, expires from its own impotency. If such an interpretation can be reasonably given said article, it can only be due to the proviso therein that,—

" 'Such adoption shall not interfere with the rights of forced heirs.'
" * * * * * * *

"It seems reasonably clear to us that within the meaning and intendment of Article 214 of the Code, the term 'rights of forced heirs' simply comprehends and was intended to embrace only that interest in a succession of which such heirs may not be deprived, save for cause. In other words, the legitime. . . ."

*Alexander* v. *Gray* then quotes from *Succession of Hosser,* 37 La.Ann. 839, 841, with approval, stating at p. 644 that the case "clearly and correctly defined the rights and privileges of an adopted person in this state, and in doing so has in like manner fixed the rights of forced heirs into which an adopted heir may not project a claim." That language quoted at p. 644 reads in its pertinent part as follows:

" 'The act of adoption conferred on the adopted child, all the rights constituting the relation of parent and child . . . with this restriction, that the adoption was not to interfere with the rights of their forced heirs; that is: of the legitime of such heirs.
" * * * * * * *

" 'The rights conferred were those of a legitimate child, that is: rights to inherit both without, and notwithstanding a will.' "

*Alexander* v. *Gray, supra,* then concludes its discussion of the relative rights of adopted child and legitimate child as follows (p. 644):

"Why may not the same rule be applied to children (forced heirs) as

We therefore conclude that, as in Louisiana, pursuant to §§ 132, 133, and 118 of our Civil Code, adopted children have the right to a *legítima* [6] in the estate of their adopter, provided this does not prejudice the rights of the forced heirs provided by the Code.

▮▮▮ Section 736 of our Code then comes into play. That Section reads in part as follows: "Forced heirs are:

"1. Legitimate children and descendants, with regard to their legitimate parents and ascendants;

"2. * . * * * * * *

"3. The widower or widow, *the natural children legally acknowledged . . .*" (Italic ours.)

We must therefore determine how the rights of the acknowledged natural children herein—classified as forced heirs by § 736—shall be preserved without injury, as required by § 132, when the testator, as here, also leaves adopted children. This question is answered by the provision in § 769 that "When the testator leaves no legitimate descendants or ascendants, the acknowledged natural children shall be entitled to a third of the inheritance."

The argument that this Section does not apply because adopted children must be considered as equivalent to legitimate descendants has been rejected in *Bardeguez* v. *Bardeguez, supra,* where we said at pp. 698–700:

". . . An adopted child is not such an heir, and although according to the code he has the rights of a legitimate child, without prejudice to the rights of forced heirs, which continue to be the

---

regards the rights of the adopted child? Give to them their legitime and the requirements of Article 214 of the Civil Code are satisfied. Thereafter, the adopted child comes in for his share of the estate from the disposable portion and enjoys 'all of the rights of a legitimate child' in the estate of the adopter, and without 'interfering with the rights of forced heirs', as contemplated by law."

To the same effect, Civil Effects of Adoption on the Descent of Property by Inheritance in Louisiana, 13 Tulane L. Rev. 287, 289–90.

[6] *Legítima* or "legal portion is that part of the property which the testator cannot dispose of because the law has reserved it for specified heirs, called on that account heirs by force of law." Section 735, Civil Code.

same as though the adoption had not been made, nevertheless, we do not believe that these provisions have the effect of including the adopted child among the forced heirs in the direct line . . .

* * * * * * *

"As may be seen, *line* in the civil law means a series or order of persons bound together by a natural relationship having its origin in a community of blood, the proximity of which is determined by the number of generations. When descent is direct, the kindred are in the direct line, linked by common blood and by no other relationship.

* * * * * * *

"The adopted child may not, therefore, be considered as a forced heir in the direct line, since the connection between the adopted child and his adopting parent is quite different. . . ."

By the same token, the amount of the *legítima* of the acknowledged natural children is not governed by the provisions of § 767 of the Civil Code,[7] since that Section presupposes the existence of legitimate children and acknowledged natural children. And adopted children, as we have seen, are not considered as children of the direct line for this purpose.

We therefore approach the facts of this case with the end result that although the acknowledged natural children are entitled to receive one-third of the property of the testator, pursuant to § 769, as their *legítima*, any remaining property must be made subject to a forced portion for the adopted children since that is done without injuring the rights belonging to forced heirs, as provided by § 132.

---

[7] That Section reads as follows:

"When the testator leaves legitimate children or descendants, and natural children, legally acknowledged, each of the latter shall have a right to a portion equal to one-half of that pertaining to each of the legitimate children who have not received any advantage or extra portion; *Provided,* it can be included in the third which may be freely disposed of, from which it must be taken, after the burial and funeral expenses have been deducted.

"The legitimate children may pay the portion pertaining to the natural ones in cash, or in other property of the estate, according to just rules."

## II

■ The next contention of the appellants is that the district court erred in not holding the will void under § 742 because of the alleged omission of the adopted children from the will. This argument is founded on the provision of § 742 of our Civil Code that "omission of any or of all the lawful heirs in the right line . . . shall annul the institution of an heir . . ." The lower court held that even if the adopted children are forced heirs—we have found that they are with the above-noted limitation—they were not omitted from the will, and that therefore the proper action for them to file was one for completion of their portions and not for nullity of the institution of heirs.

Manresa, in his Commentaries on the Spanish Civil Code, vol. 6, p. 350, commenting on § 814 of the Spanish Code, equivalent to § 742 of our Civil Code, says: "*The omission must be complete.*—This requirement can be deduced from Section 814 itself, and is evident when it is read together with Section 815. The forced heir to whom the testator leaves something by any title in his will, is not really omitted, since he is designated and his participation in the inheritance is recognized. . . . The former Section deals with total omission, the latter with partial omission. Their effects ought to be and are, as we shall see, completely different."

Section 743 of our Code is copied from § 815 of the Spanish Code. Manresa, *supra,* says at p. 358: "The spirit of Article 815 is obvious: when the forced heir has not been forgotten by the testator, when he has received something from the estate, he can claim only that his *legítima* be completed . . ." And Scaevola, Commentaries on the Civil Code, vol. 14, says at pp. 360–1: "The omission consists in the silence of the testator with respect to the forced heir, in not leaving him anything in the will, because if something is given to him, it will be a case under Section 815, for completion of the *legítima.*"

Since the adopted children are legatees in the will in the amount of $10,000 apiece and are also two of the remainder-men as to the legacy of one-third of certain real estate and as to the residuary property of the estate bequeathed to Carmen Escobar for life, we are in agreement with the district court that § 742 has no application herein because the adopted children were not omitted entirely from the will. Their remedy, if any, must therefore come under § 743 for completion of their shares.[8]

Moreover, there is an additional reason why § 742 cannot apply here. That Section refers to "lawful heirs in the right line," which does not include adopted children. *Bardeguez* v. *Bardeguez, supra,* at pp. 698-9 holds that § 742 "refers exclusively to forced heirs in the direct line (*linea recta*)," and that although an adopted child "has the rights of a legitimate child, without prejudice to the rights of the forced heirs," that does not "have the effect of including the adopted child among the forced heirs in the direct line who are the only ones who may annul the designation of heirs to the extent provided in Section 742 of the Code."

This court then goes on to say in the *Bardeguez* case that resort may be had by the adopted child to § 741.[9] Unlike that case, ours is not a case in which "the preterition of the plaintiff is plain.[10] In the *Bardeguez* case nothing was given to one of the adopted children; here they have not been totally omitted. Section 742 therefore never comes into play here. But, although perhaps possible, there is no reason here to fall back on § 741, as was done in the *Bar-*

---

[8] Section 743 reads as follows: "The heir by force of law to whom the testator has left, for any reason whatsoever, less than the legal portion due him may demand the fulfilment thereof."

[9] Section 741 reads as follows: "A testator can not deprive the heir of his legal portion, except in the cases expressly fixed by law.

"Neither can he impose upon it any burden, condition or substitution of any kind whatsoever, with exception of what has been prescribed with regard to the usufruct of the surviving spouse."

[10] *Bardeguez* v. *Bardeguez, supra,* at p. 697.

*deguez* case in lieu of § 742. Rather, § 743 fits the facts of the instant case more closely, since here there was only partial, not total, deprivation of the forced portion, and since § 743 requires only that the moving party be an "heir by force of law," and not an "heir in the right line."

*Ex parte Boerman*, 34 P.R.R. 120, involved a will in which an acknowledged natural child had been left a legacy of $5,000. The opinion uses the following language at p. 123: "The will could not prevail as an entirety. It ignored an heir at law and, in accordance with the express provision of Section 802 of the Civil Code, [now, § 742] the designation of heirs in the will became void." In view of the reasoning herein, we deem it advisable to indicate that in our opinion this statement was mistaken.

 It is appropriate at this point to state that it is by no means fatal that the plaintiffs-appellants have misconceived the title of their remedy and the Section of the Code which applies thereto. Even though the action is brought for nullity of testamentary dispositions under § 742, the remedy found in § 743 may be applied, provided all the requisites thereof are present. This is exactly what occurred in *Bardeguez* v. *Bardeguez,* the only difference being that this court entered judgment in the *Bardeguez* case pursuant to § 741 rather than under § 743 when it found that the relief prayed for under § 742 did not lie. And it is clear that the three elements required by § 743—(*a*) something is left in the will to the heir; (*b*) the title by which the thing is left is immaterial; (*c*) the complaint prays for the amount needed to obtain the *legítima*—are found herein. Scaevola, *Comentarios al Código Civil*, vol. 14, p. 369.

## III

 In the third assigned error the appellants contend that the lower court erred in declaring the partition valid, asserting that it should have been declared void because of the inexistence of the same.

The said partition has been before this court on two other occasions. See *Sosa* v. *Registrar*, 34 P.R.R. 733, where we ordered it recorded; and *Sosa* v. *Sosa*, 58 P.R.R. 474, where the two other legatees of $10,000 each as set forth above—but not the plaintiffs-appellants herein, who also received $10,000 apiece as legatees in the same clause of the will—filed suits as *legatees* against the heirs of the testator, attacking the partition as void. We held there that (p. 481) "the legatees have no right either to intervene in the partition of the inheritance, since as this Court has repeatedly said, the partition is nothing but an exchange, among the heirs, of the indeterminate part to which they have a right in the inheritance, for a determined and specific part which they receive for it."

The *Sosa* case also went on to hold that the legatees in that clause of the will could not recover in the suit against the heirs of Sosa because the testator had directed that Juan I. Sosa be one of the administrators of the legacies in question, and under the deed of partition executed by Juan I. Sosa and others, Juan I. Sosa had received from the assets of the estate the money for the payment of the said legacies to the legatees. In entering judgment for the defendant, this court therefore said at pp. 482–3: "It was sufficient that the payment be made to the person designated by the testator to receive it, and it was made to that person. If Sosa, failing to comply with the legal and moral obligation that he had toward his children and with the confidence deposited in him by his father, misused the funds delivered to him for its administration, he should be blamed . . . but this liability cannot be imposed on the defendant who religiously paid to whom, in accordance with the will, she was bound to pay."

However, in the instant case, the attack on the partition is on a different theory. The plaintiffs-appellants, who did not join in the suit filed in the case just noted by their two co-legatees, do not sue here as legatees, asking for the pay-

ment of their legacies. On the contrary, they press for a declaration that the partition deed is void as inexistent because they as forced heirs were not parties thereto.

As Manresa puts it in his Comentaries on the Civil Code, vol. 7, at p. 611: "Of course the division of the inheritance is accessory to the institution of heirs; so that in all cases in which the institution be annulled for any cause, the division shall be null . . ." But here again the difficulty is that the alleged invalidity of the partition depends on our first conclusion that the nullity of the institution of heirs lies herein; and, as we have seen, there was no absolute omission of the heirs in the will and adopted children are not "lawful heirs in the direct line," both of which are indispensable requisites to a declaration of nullity of heirship.

The plaintiffs-appellants nevertheless contend that the partition is void solely because § 1026 of the Civil Code provides that "Divisions may be rescinded for the same causes as obligations." They contend that since they were not parties to the partition deed, that one of the requisites of § 1213 of the Code—consent of the contracting parties—does not exist.

In commenting on this question, Manresa, in his Commentaries on the Civil Code, vol. 7, p. 709, says: " . . . The word rescision in Section 1073 [which corresponds to § 1026 of our Civil Code] must be given a broad meaning, as a synonym of a partition being without effect.

"Following, therefore, the rules established for contracts, we should say that partition does not exist where consent, object, or consideration is lacking . . ."

Since "The partition represents a contract between the co-heirs,"[11] which under § 1026 can be rescinded for the same causes as obligations, it would at first blush seem that forced heirs who did not participate therein and therefore did not

---

[11] Manresa, *supra*, vol. VII, p. 709. To the same effect, Scaevola, *supra*, vol. 18, p. 424.

consent thereto could obtain a declaration that it was inexistent. However, this result is forbidden by express mandate of the Code. Section 1033 reads as follows:

"A division, made with preterition of any of the heirs, shall not be rescinded unless it be proven that there was bad faith or deceit on the part of the other persons interested; but the latter shall be obliged to pay to the omitted person the proportionate share belonging to him."

Absent deceit or bad faith on the part of the other heirs, which has not been shown here, such a partition omitting some heirs will subsist, and an action to declare it inexistent does not lie. Preterition as used in § 1033 means the failure by one or more of the heirs to participate in the partition. See *Enciclopedia Jurídica Española,* vol. 24, p. 383. Scaevola, *supra,* vol. 18, p. 466, criticizes this doctrine, rightly we think, on the ground that § 1033 should have been written to include cases for nullity, but not for rescission as provided in § 1026, for, as already noted, an heir who never participated in a partition never consented and therefore never participated in the contract embodied in the partition.

Nevertheless, we see no escape from the provisions of § 1033, and we are therefore constrained to the view that the partition herein was valid; and that the plaintiffs-appellants have only a personal action against their co-heirs for the remainder of their forced portions.

■■ We also add that even if the partition were null, the defendants Matos, The Federal Land Bank, and the Land Bank Commissioner are under the circumstances herein third parties (*terceros*) as to the real property originally a part of the estate and now owned by them or on which they hold mortgages. Although, pursuant to judicial order, marginal annotations of the adoptions of the plaintiffs-appellants by the testator were duly made in the appropriate places in the Civil Registry, no such notice was filed at any time in the Registry of Property.

*Enciclopedia Jurídica Española,* vol. 24, p. 384, says:

"Do the effects of rescission transcend to third parties the same as to coheirs? The affirmative has prevailed in accordance with which the rescission annuls all the conveyances and execution of mortgages and other property rights that have been constituted by any of the heirs; but we shall never tire of repeating that when rights affecting immovable property are involved, the Mortgage Law has to be taken into account, and in accordance with Sections 36, 37 and 38 of the same, in the event of rescission of a partition, the third party who has his title recorded in the Registry, will enjoy complete security, if the cause of rescission does not appear from the Registry. . . . . It is obvious that many irregularities are thereby protected which lead to the injury of minors, persons with a disability and others especially protected by law, since the personal action remaining against the co heir who conveyed or mortgaged, can rarely make one whole."

We therefore conclude that, in accordance with §§ 34 and 36 of the Mortgage Law, the lack of notice of the alleged causes for rescission in the recordations of these real properties in the Registry of Property would protect those who purchased or mortgaged without actual notice thereof. Recordation of adoption in the Civil Registry was not enough; to bind purchaser or mortgagees of real estate affected thereby annotation thereof in the Registry of Property was required under the circumstances of this case. And this did not occur.

As to the defendant Loíza Sugar Company, once we conclude that the partition deed is not void as such, there can obviously be no right on the part of the plaintiffs-appellants to force that corporation to unravel the transfers made in good faith on its books of the shares of its stock pursuant to the partition deed. Likewise, all transactions with various creditors and debtors of the estate effected by the executor pursuant to the partition deed cannot be assailed herein.

# IV

 We now reach the only remaining question—considering this as a personal action against their coheirs to complete their portions, did the adopted children, plaintiffs-appellants herein, receive less than their portions as forced heirs? As we have seen, under the circumstances of this case, the portions of the forced heirs specifically designated by law as such must first come out of the estate before we can consider the rights of adopted children. As to the specifically mentioned heirs—acknowledged natural children—involved herein, § 769 of the Code provides that "When the testator leaves no legitimate descendants or ascendants, the acknowledged natural children shall be entitled to a third of the inheritance."

We are unable to agree with Muñoz Morales[12] that under the circumstances herein—the survivorship consisting of adopted and acknowledged natural children—§ 767[13] of the Code should prevail. We cannot conclude that § 767 is applicable, inasmuch as we have already stated herein that adopted children, although forced heirs, are not legitimate descendants, the latter referring only to blood kin.

But when we then turn to the problem of determining the forced portions of adopted children, we find no specific provision in the Code. This resulted from the failure of the Legislature to provide therefor, when it copied §§ 132 and 133 from the Louisiana Code. Nevertheless, in view of § 7 of the Civil Code, we deem it appropriate to turn to § 737 for solution of this problem. That Section provides in part that "The legal portion of the legitimate children and descendants is composed of two thirds of the hereditary estate of the father and of the mother."

Although the Code does not anywhere fix a specific forced portion for adopted children, they are entitled to a forced

---

[12] Muñoz Morales, *supra*, at p. 439.
[13] That Section is quoted verbatim in footnote 7.

portion provided no injury is thereby done to the portions of forced heirs specifically mentioned in the Civil Code. And if it is borne in mind that § 737 would be applied together with § 769, under which one-third of the estate is being first set apart as the forced portion of the acknowledged natural children before the adopted children could be awarded under § 737 two thirds of the estate, it is fair to say that these Sections as thus construed have been harmonized and applied in accordance with the intention of the Legislature.[14]

We next turn to § 746 of the Civil Code, which furnishes guidance as to quantitative determination of the legal portions. This Section reads as follows:

"In order to determine the legal portion, the value of the property remaining on the death of the testator, after deducting all debts and charges, without including therein those imposed in the will, shall be taken into consideration.

"To the net value of the hereditary estate shall be 'added the value of all the collationable gifts bestowed by the said testator at the time they were made."

There were no collationable gifts to be brought into the estate in the instant case. And the parties agree that the assets and debts of the estate amounted to $171,893.06, and $24,565.68, respectively. The value of the estate, in order to determine legal portions, is therefore agreed to be $147,327.38. One third of this, under § 769, was the legal portion of the natural acknowledged children, that is $49,109.12-2/3, to be divided between them, or $24,554.56-1/3 apiece. Since each of them actually received $30,109.26, each received $5,554.69-2/3 more than his share of the *legítima*. On the other hand, the portion of the adopted children should have been, under § 737, two-thirds of the estate after first deducting the *legítima* of the acknowledged natural children, that is, two-thirds of $147,327.38, or $98,218.25-1/3, or

---

[14] We obtain no aid from the Spanish commentators on this point as §§ 132 and 133, which give rise to this problem, are not, as we have seen, found in the Spanish Code.

$49,109.12-2/3 apiece. Since the adopted children did not receive the entire amount of their said forced portions, they have the right herein to claim the balance from their co heirs and the legatees. Since the entire estate should have been taken up as aforesaid, there was no money available for payment of legacies. The plaintiffs are therefore entitled to recover the money paid to legatees in prejudice of their forced portions.

A final caveat is necessary. In *Sosa* v. *Sosa*, 58 P.R.R. 474, we held, as already noted, that payment to Juan I. Sosa of all or any part of the $10,000 legacies provided in the will for each of the two plaintiffs in that case must be considered as payments to the latter, in view of the provision of the will making Juan I. Sosa "administrator" of the said legacies. But that holding was predicated on the status of the two plaintiffs therein, who were suing as legatees. In the instant case the status of the plaintiffs-appellants is different. We have already stated herein that since the testator bequeathed to the plaintiffs-appellants $10,000 apiece in the same clause of the will as involved in *Sosa* v. *Sosa, supra,* the plaintiffs-appellants were not omitted from the will and consequently were not entitled to annul the institution of heirs contained therein. But if, as we have indicated, the plaintiffs-appellants are entitled to the said $10,000 apiece, not as mere legatees but as part of their forced portions, § 741 of the Civil Code [15] defeats any attempt to impose any condition on the payment thereof, including the condition herein that payment to an "administrator" thereof named in the will shall be sufficient. Property devised to a forced heir in the will must, if it is to be considered as part of the portion of the forced heir, go absolutely to him; the conditions, if any, attached thereto by the testator fall. Consequently, it will not be enough in the instant case to show that $20,000 was paid to Juan I. Sosa in discharge of the

---

[15] Section 741 is set forth verbatim in footnote 9.

said legacies to the plaintiffs-appellants. For that sum or any part thereof to be calculated as part of the forced portions of plaintiffs-appellants, there must be a showing that they or someone properly acting for them while they were minors actually received the same.

In view of the results we have reached on the questions of law, and the lack of findings of fact by the district court on these questions, we believe the present state of the record does not permit entry of a judgment by this court. Among other things, there is, for example, a contention that by virtue of the purchase of certain real property by Juan I. Sosa and the alleged transfer thereof to the plaintiff-appellants, the latter have actually received their aforesaid legacies of $10,000 each.[16] We believe this court should (a) affirm the judgment as to the defendant Matos, Federal Land Bank of Baltimore, The Land Bank Commissioner, Loíza Sugar Company, Marcial Suárez y Suárez, and Ceferino Osorio; (b) reverse the judgment as to the remaining defendants; and (c) remand the case to the district court for further proceedings not inconsistent with this opinion.

---

[16] We also note in passing that Carmen Escobar, the mother of the two acknowledged natural children, a legatee in a substantial amount and a party to the partition deed, died prior to the filing of the fifth amended complaint and her successor in interest was not joined as a defendant, although in the earlier complaints Carmen Escobar was joined as a party defendant herein. But since we believe that the plaintiffs-appellants can recover at the most by way of a personal action against co-heirs and legatees to disgorge whatever amount is necessary to complete the shares of the plaintiffs-appellants as co-heirs, the persons who participated in the partition deed and the various forced heirs and legatees are not necessary parties. Each of the coheirs and legatees is a proper but not a necessary party in the view we have taken of the case.